IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARCUS ANTHONY BASS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2623 |
| | § | |
| NATHANIEL QUARTERMAN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Marcus Anthony Bass, a state inmate proceeding *pro se*, seeks habeas corpus relief

under 28 U.S.C. § 2254 challenging his state felony conviction.  Respondent filed a motion

for summary judgment (Docket Entry No. 13), to which petitioner responded (Docket Entry

No. 18).

Based on consideration of the pleadings, the motion and response, the record, and the

applicable law, the Court **GRANTS** summary judgment and **DISMISSES** this action for the

reasons that follow.

### I.  Procedural Background

A jury found petitioner guilty of aggravated robbery under cause number 838382 in

the 185th District Court of Harris County, Texas.  The trial court sentenced him to thirty

years confinement.  The conviction was affirmed on appeal. *Bass v. State*, No. 01-01-00254-

CR (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd) (not designated for publication).  The

Texas Court of Criminal Appeals refused discretionary review, and. denied petitioner's state habeas application without a written order. *Ex parte Bass*, No. 59,9045-02.

Petitioner raises the following grounds for federal habeas relief:

(1)     fundamentally defective indictment;

(2)     insufficiency of the evidence;

(3)     ineffective assistance of trial counsel; and

(4)     ineffective assistance of appellate counsel.

Respondent argues that these grounds fail as a matter of law.

## II.  Factual Background

The state appellate court set forth the following statement of facts in its opinion:

Eddie James Wilson lived alone at 734 Ridge in Crosby, Harris County, Texas. Wilson has known appellant his whole life; they grew up in the same neighborhood and never had any personal problems. On February 17, 2000, Wilson had his money out to pay bills when his friend Lionel White stopped by with appellant to see Wilson's brother. Wilson put his money aside while he spoke with White and appellant for five or 10 minutes until they left.

Later that evening, Wilson telephoned appellant and asked him to pick up some cigarettes and rolling papers. When appellant came back by Wilson's house, he was with Craig Windfont, whom Wilson also knew from their neighborhood. Windfont stayed in the car while appellant went into Wilson's house with a rifle in his hand. Wilson went to get money to reimburse appellant and, when he returned, appellant pointed the rifle at Wilson's face and demanded Wilson's money and cocaine. Appellant then shot Wilson in the face and frisked Wilson for money. Wilson heard appellant rummaging through his belongings. Wilson determined that appellant took about 30 or 40 dollars and a stack of 50 or 60 CDs.

After the shooting, the two struggled for the gun until Wilson passed out. When Wilson came to, he phoned 911 for help. Deputy Arthur Frazier

2

with the Harris County Sheriff's Department responded to the call for an ambulance.

When Deputy Frazier arrived at the scene, Wilson was lying face-down on the floor of the living room with blood on his head and on the carpet. Wilson's face was swollen, and he could not speak well, but was able to say that appellant shot him. Deputy Frazier searched the residence and found several rocks of crack cocaine, a .22 caliber shell casing, and drops of blood, but found no additional ammunition, or the firearm used to shoot Wilson. There was nothing in the house to indicate that Wilson owned a firearm. Later at the hospital, Wilson again told Deputy Frazier that appellant shot him.

Wilson testified that the crack cocaine found at his house was his, but said he had not used any drugs that day because he was waiting for appellant to return.

A few days after the incident, appellant fled, with his girlfriend, from Harris County to Atlanta, Georgia, where he was arrested on unrelated charges and extradited to Houston. On direct examination, appellant said he was arrested in Atlanta for a traffic violation, but admitted, on cross-examination, that his arrest was related to the sale and possession of drugs.

*Bass*, at 1.

### III.  The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2254. Under the AEDPA, federal relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies

a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 537 U.S. at 330-31.

### IV.  Fundamentally Defective Indictment

Petitioner alleges that the indictment in his case was fundamentally defective for failing to identify a term year for the grand jury and failing to reflect a transfer order transferring the case from the 228th District Court to the 185th District Court of Harris County, Texas.  In rejecting this argument on collateral review, the state habeas court made the following relevant finding:

> Applicant's allegation that the indictment was defective need not be considered since Applicant fails to present any allegation or evidence that he challenged the indictment by pre-trial motion to quash.

*Ex parte Bass*, p. 85 (citation omitted).  The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.

A federal court may not consider a state prisoner's constitutional claim if the state courts based their rejection of that claim on an adequate and independent state ground. *Emery v. Johnson,* 139 F.3d 191, 194-95 (5th Cir. 1998).  If a state court rejects a habeas petition based on a purely procedural ground, rather than on a consideration of the merits of the constitutional claim, the dismissal is independent of that claim.  As long as the application of the procedural rule is adequate and not arbitrary, it bars federal review of the constitutional claim.  Federal habeas courts should not disturb state court judgments that are based on adequate and independent procedural state law grounds. *Dretke v. Haley*, 541 U.S. 386, 392 (2004).

Accordingly, petitioner's claim has been procedurally defaulted. As petitioner shows neither good cause nor actual prejudice for excusing the default, his claim cannot be considered on federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Nobles v. Johnson*, 127 F.3d 409, 422 (5th Cir. 1997)

Even assuming this claim were not procedurally defaulted, it has no merit. The sufficiency of a state criminal indictment is not a matter for federal habeas relief unless it is shown that the indictment was so defective that it deprived the state court of jurisdiction. *Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003). Petitioner makes no such showing.

Petitioner fails to show that the state court's denial of habeas relief on this issue was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. Nor does he rebut the presumed correctness of the state court's findings with clear and convincing evidence. Respondent is entitled to summary judgment on this issue.

## V. Insufficiency of the Evidence

Petitioner asserts that there is no evidence to support his conviction. In reviewing the sufficiency of the evidence, the federal standard for review is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the jury may disregard any evidence it chooses to disregard, as it is the "responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

from basic facts." *Id.* Any contradictory testimony does not affect the validity of the guilty verdict. *Id.* The evidence can be sufficient to support a conviction under *Jackson* even when it also supports a claim of innocence. *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The state court reviewed the evidence on direct appeal and found it legally sufficient under *Jackson*, as follows:

> [A]ppellant contends the evidence is legally insufficient to sustain appellant's conviction for aggravated robbery because the State failed to prove he used or exhibited a firearm during the theft or attempted theft of property owned by Wilson. Appellant argues that there was no physical evidence that any property had been taken and denies using or exhibiting a firearm against Wilson. Appellant claims that Wilson was shot by accident during a struggle and that it was Wilson who produced the weapon. We apply the usual standard of review [under *Jackson*].
>
> To prove its charge of aggravated robbery, the State had to produce evidence that appellant either used or exhibited a deadly weapon during the theft or attempted theft of property owned by Wilson. Viewed in the light most favorable to the jury verdict, the facts show that appellant shot Wilson in the face with a .22 caliber rifle and took Wilson's cash and CDs. This evidence that appellant used or exhibited a deadly weapon during the theft satisfied the elements of aggravated robbery. Although appellant gave conflicting testimony, the evaluation of a witness's credibility and demeanor is left to the factfinder. Appellant recognizes that credibility of a witness and conflicts between witnesses are matters to be decided by the factfinder, but argues that Wilson's credibility is so questionable that we should reverse and acquit. We disagree.
>
> A rational trier of fact could have found the essential elements of aggravated robbery beyond a reasonable doubt. We hold that the evidence is legally sufficient to support the jury verdict.

*Bass*, at 2 (citations omitted).

The evidence set forth by the state court of appeals in its opinion is itself enough to allow a rational trier of fact to convict petitioner of the allegations in the indictment and jury charge, and the evidence presented at trial was enough to defeat a legal sufficiency challenge in a Texas appellate court. *See King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). This Court's independent review of the trial record reveals sufficient evidence to sustain the jury's verdict under *Jackson*. No grounds for federal habeas relief are shown under this issue.

## VI.   Ineffective Assistance of Trial Counsel

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI. A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984). To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient performance. *Id.* at 687. The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim. *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor

of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy. *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992). However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694. To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled. *Id.*

Petitioner initially was represented by appointed counsel, then, as of the day before trial, by retained counsel. Petitioner's following two instances of ineffective assistance are raised against retained counsel.

A.    Failure to Investigate, File Motions, and Present Evidence of Mental Illness

Petitioner complains that counsel was not prepared for trial, and that he failed to investigate the case, file pretrial motions, request pretrial hearings, or investigate and present

evidence of petitioner's mental health problems. He further complains that counsel failed to consult with him prior to trial to plan their defense.

The record shows that appointed counsel requested and obtained a competency evaluation of petitioner. *Id.* at 18-19. According to the competency evaluation, petitioner reported that he had not taken psychotropic medications for almost a year prior to his arrest, and had not taken antidepressants for several months prior to the offense. *Id.* at 26. Petitioner further reported prior hospitalizations for hyperreligiosity, confusion, paranoia, auditory hallucinations, and bizarre behavior. *Id.* at 27. Petitioner admitted to abusing drugs, and reported being treated by a private psychiatrist and receiving treatment while in jail. The competency examiner stated that petitioner's thought process was goal directed, his thought content free of delusions, and that he reported no auditory hallucinations. The examiner found petitioner competent to stand trial.

The competency examiner further stated that petitioner told him Wilson had been accidentally shot during their struggle over Wilson's shotgun during a cocaine purchase. After his examination and evaluation of petitioner, the examiner concluded that:

> Despite his history of depression, there is nothing to suggest that at or around the time of the alleged offense, [petitioner] was suffering from a major mental disorder the nature or severity of which would have impaired his ability to differentiate between right and wrong. In the opinion of this examiner, there is no evidence that at the time of the alleged offense[, petitioner] did not, as a result of mental disease or defect, know that the conduct charged was wrong, and therefore was SANE.

*Id.* at 28-29 (emphasis in original).

The record shows that petitioner's appointed counsel filed numerous other pretrial motions, including a *Brady* motion, request for investigator funds, motion for writings and statements, motion for discovery, motion to inspect, examine, and test physical evidence, motion in limine, and notice of intent to raise the issue of self defense.  Clerk's Record at 30-66.  The day before trial, the trial court granted petitioner's motion to substitute retained counsel for appointed counsel.  Clerk's Record at 79-81.

Appointed counsel was aware of petitioner's prior mental health problems.  The competency evaluation found petitioner competent, sane, and without evidence of any major mental disorder, disease, or defect which would have impaired his ability to differentiate between right and wrong at the time of the offense.  Nothing in the record supports petitioner's conclusory allegations that this information was not available to or known by retained counsel, or that other available medical evidence showed he was mentally ill at the time of the offense.[1]  Nor does petitioner rebut the presumed reasonableness of trial counsel's professional judgment and trial strategy in not calling petitioner's family to testify

---

[1] In his state habeas application, petitioner submitted copies of a temporary psychiatric "hold" proceeding filed against him by his grandmother in 1995.  *Ex parte Bass*, p. 67.  The proceeding included a certificate of medical examination signed by Bud Lile, M.D., who evaluated petitioner for purposes of the application following petitioner's destruction of neighborhood property.  Lile noted that petitioner had poor impulse control and judgment, and that he believed "God can control his body."  He diagnosed petitioner with bipolar disorder, manic phase, and recommended a temporary hold.  The stated causative factor is illegible on this Court's copy of the document.  *Id.* at 68.  The temporary hold was granted,  *id.* at 69, but petitioner submitted no further information.  Nothing shows that the individuals involved in the 1995 proceeding were available and willing to testify at trial, or that their testimony would have benefitted the defense. Although petitioner claims he was re-hospitalized in 1998, his one-page document submitted on collateral review provides no helpful information.

11

to his prior mental problems in 1995 and 1998, particularly in light of the court-appointed competency evaluator's recent and unfavorable psychiatric evaluations, and of petitioner's trial testimony that Wilson was shot accidentally during their struggle over the firearm.

In support of his failure to investigate claim, petitioner asserts that had counsel investigated Wilson's house, he could have shown that Wilson's neighbor had the opportunity and means to enter Wilson's house after the shooting incident and steal the items Wilson reported missing.  The trial record shows, however, that this suggestion and its supportive evidence were presented at trial.  S.F. Vol. 3, pp. 34, 92, 128, 130.

Petitioner also complains that counsel failed to move to suppress the firearm, failed to object to evidence of his statements to Dr. Friedman in jail, and failed to object to the State's scene photos and diagram exhibits.  It was undisputed that Wilson was shot with a firearm during the incident, and that the exhibit firearm was shown to be similar to the one used in the shooting.  Petitioner shows no grounds for suppression of the firearm that, if raised by counsel, would have been granted and that in reasonable probability, the results of the trial would have been different.  Nor does he show that had counsel objected to the State's scene photos and diagram exhibits, the objection would have been granted and the result of his trial tenably would have been different.  *Strickland* does not require defense counsel to make groundless objections.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

As to the comments regarding petitioner's statements to Dr. Friedman while in jail, the trial record shows the following relevant exchanges during the State's cross-examination of petitioner:

> [State]:      It's fair to say that when you told the ladies and gentlemen of the jury about five minutes ago that you were arrested [in Atlanta on a traffic violation], that it was a lie.
>
> [Petitioner]:  Not necessarily a lie.  Like I said, they was tailgating the car.
>
> [State]:      Were you arrested for a traffic offense or not?
>
> [Petitioner]:  No, sir.
>
> [State]:      Okay.  So, it's a lie.  You lied.  You told the same thing to Dr. Friedman in the jail, didn't you?
>
> [Petitioner]:  I don't know who Dr. Friedman is.
>
> [State]:      Okay.  Is that the person that you – that you talked to when you claim[ed] that you weren't competent to stand trial?  Do you remember that?
>
> [Petitioner]:  I don't remember claiming that I wasn't competent.  I was just going by my mental – that I was – somebody was after me.

S.F. Vol. 3, pp. 111-113.

> [State]:      All right.  And what did you tell the doctor in the jail [about why] you were stopped?
>
> [Defense counsel]:   Relevance, Judge.
>
> [Court]:      Sustained.
>
> [State]:      Did you tell them something different than you've admitted to under cross examination here?
>
> [Defense counsel]:   Same objection, Judge.

13

[Court]:     Overruled.

[Petitioner]:  Could you rephrase your question?

[State]:     Sure. Is what you told the doctor, Dr. Friedman, different than what you've admitted to after you've had – answered a couple of my questions?

[Petitioner]:  No, sir.

[State]:     It's not? So, you told the ladies and gentlemen of the jury – I finally got you to admit that you lied to them about being stopped on traffic, right?

[Petitioner]:  I feel like that's irrelevant to what you – the point you're trying to get across.

[State]:     I'm sure you do, sir. But it's – you'd agree with me that you're lying. You lied to the jury and you lied to the doctor in jail.

[Petitioner]:  I didn't lie to the doctor. I told him exactly what I remembered happening.

\*    \*    \*    \*

[State]:     You remember back on or about the 27th of December being interviewed by a Dr. Friedman at the jail. Do you remember that?

[Petitioner]:  Yes, sir.

[State]:     Tell me if I read this right.

[Defense counsel]:  Judge, I'm going to object to that.

[Court]:     I'm sorry. I did not hear.

[Defense counsel]:  I'm going to object to that line of questioning, Judge. It's totally irrelevant to this case. Totally irrelevant.

[Court]:     Come on up.

14

[At the bench, off the record]

[State]:      Pass the witness.

*Id.* at 120-122.  Contrary to petitioner's allegations, trial counsel did object to questions regarding petitioner's specific statements to Dr. Friedman.   To the extent petitioner complains counsel was deficient in failing to object to all of the State's impeachment questions regarding Dr. Friedman, he fails to show that an objection to any particular question would have been granted and that but for counsel's failure to object, the result of his trial would have been different.

The state habeas court found that petitioner "fail[ed] to show that the representation of his trial and appellate counsel fell below the minimum standard of competence," and denied relief on this issue. *Ex parte Bass*, p. 85.  The Texas Court of Criminal Appeals relied on this finding in denying habeas relief.  Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland* or was an unreasonable determination of the facts based on the evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment on this issue.

B.      Failure to Call Witnesses at the Punishment Phase of Trial

Petitioner asserts that he gave retained counsel the names and addresses of five potential defense witnesses – Jennie Walker, Craig Windfont, Lionel White, Karen Fondel, and Martha Bradford – and that counsel failed to call them as witnesses during the punishment phase of trial.  (Docket Entry No. 1, p. 30.)  He further complains that counsel

15

failed to interview and call six other potential witnesses during the punishment phase –
Kathryn Kotria, M.D., Kathryn Marteeny, Bud Lile, M.D., Sephonia Thompson, Nurse
Anderson, R.N., and Gloria Wilson. *Id.* at 31-33.

To show prejudice in the sentencing context, a petitioner must demonstrate a
reasonable probability that, but for trial counsel's errors, the petitioner's non-capital sentence
would have been significantly less harsh. *Spriggs v. Collins,* 993 F.2d 85, 88 (5th Cir.
1993); *see also United States v. Grammas,* 376 F.3d 433, 438 n. 4 (5th Cir. 2004).

In support of these claims, petitioner submitted affidavits in his state habeas
proceeding from three of the eleven uncalled witnesses – Jennie Walker, Karen Fondel, and
Martha Bradford. *Ex parte Bass*, pp. 56-60. In her affidavit, Jennie Walker testified that to
the best of her knowledge, petitioner did not own a gun, and that the "Wilson boys" were
violent and known drug dealers. *Id.* at 56. Karen Fondel, petitioner's mother, testified in
her affidavit that although she was at court willing to testify, trial counsel instead called
petitioner to the stand even though he knew petitioner was a mental patient and could not be
a responsible witness. *Id.* at 58. Martha Bradford, petitioner's grandmother, stated that she,
too, was at court to testify but that defense counsel never called her even though she claimed
to have had information that may have been important to his case. *Id.* at 60. She provided
no details of this purported information in her affidavit. Petitioner fails to show that
counsel's decision not to call these witnesses was an unreasonable trial strategy, and shows
no reasonable probability that the testimony from these three uncalled witnesses would have

resulted in a significantly less harsh sentence. Accordingly, his claim of ineffective assistance as to these three witnesses entitles petitioner to no federal habeas relief.

As to the remaining eight uncalled witnesses, petitioner presented his own unsubstantiated synopsis of each person's presumed testimony, and claims each person would have testified at trial. Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of a potential witness's testimony are largely speculative. Generally, complaints of uncalled witnesses fail if a federal habeas petitioner fails to present relevant affidavits from the missing witnesses. *Id.* at 363; *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983). Where the only evidence of a missing witness's testimony is from the petitioner himself, this Court will view claims of ineffective assistance with great caution. *See Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). This particularly is true in the instant case. Petitioner's claim that his 1995 and 1998 mental health professionals would have testified to his incompetency in 2001 is speculative, conclusory, and unsupported. Regardless, it cannot be discounted from the instant record that counsel did contact these individuals, investigate their potential testimony, and decide not call them as a matter of professional judgment.

Petitioner shows no reasonable probability that testimony from these individuals would have resulted in a significantly less harsh sentence. Accordingly, his claim of ineffective assistance of trial counsel as to these eight uncalled witnesses entitles petitioner to no federal habeas relief.

17

Petitioner's generic complaint that counsel was deficient in his cross-examination of the State's witnesses in unfounded. No specific instances of deficiency are presented, and petitioner's conclusory allegations of improper cross-examination are insufficient to raise a genuine issue of material fact precluding summary judgment. Petitioner likewise fails to present a factual or legal basis for his claim that counsel was deficient in failing to challenge the chain of custody for Wilson's cocaine. Wilson testified that the cocaine found by police officers in his home was his. Petitioner fails to show that the trial court would have granted a chain of custody objection, and that but for counsel's failure to raise the objection, the result of the trial would have been different.

Petitioner complains that trial counsel was ineffective in having petitioner take the stand during the guilt-innocence phase of trial and admit to several prior criminal convictions. The *Strickland* analysis presumes counsel's strategic decision was not ineffective. Unless such a strategic decision were so ill-chosen that it permeated the entire trial with obvious unfairness, it cannot be the basis for a constitutional claim of ineffective assistance. *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997). In the case at bar, petitioner presents no probative evidence establishing that counsel's decision to preemptively present the evidence of petitioner's prior convictions was unreasonable trial strategy. Petitioner's conclusory allegation that trial counsel instructed petitioner to take the stand without any preparation is unsupported by probative evidence in the record and neither deficient performance nor prejudice are shown.

18

Petitioner's assertion that trial counsel failed to request a limiting instruction in the jury charge regarding the prior convictions is negated by the record. A review of the jury charge in the instant case shows that such an instruction was given to the jury. Clerk's Record at 92.

Petitioner's assertion that trial counsel failed to object to the State's closing argument reference to his "lie" to Dr. Friedman is groundless. This particular evidence was elicited during the State's cross-examination of petitioner, and was available for the State's use during closing argument. Further, it would have been reasonable trial strategy for counsel not to object during the State's closing argument, as the objection would have emphasized, and drawn the jury's attention to, the unfavorable evidence. Petitioner establishes neither deficient performance nor prejudice under *Strickland*.

This Court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Strickland* requires that this Court's judicial scrutiny of counsel's performance must be highly deferential with every effort made to eliminate the distorting effects of hindsight. Where, as here, a petitioner's ineffective assistance claims have been reviewed on their merits and denied by the state courts, federal habeas relief will be granted only if the state court's decision was contrary to or involved an unreasonable application of the standard set forth in *Strickland*. *See Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Santellan v. Dretke*, 271 F.3d 190, 198 (5th Cir. 2001).

19

The state habeas court found that petitioner "fail[ed] to show that the representation of his trial and appellate counsel fell below the minimum standard of competence," and denied relief on these issues. *Ex parte Bass*, p. 85. The Texas Court of Criminal Appeals relied on this finding in denying habeas relief. Petitioner fails to show that the state court's determination was contrary to or involved an unreasonable application of *Strickland*, or that it was an unreasonable determination of the facts based on the evidence in the record. Respondent is entitled to summary judgment on the claim of ineffective trial counsel.

## VII.   Ineffective Assistance of Appellate Counsel

Persons convicted of a crime also are entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985). This Court reviews counsel's appellate performance under the *Strickland* standards. *See Goodwin v. Johnson*, 132 F.3d 162, 170 (5th Cir. 1998). Petitioner must allege and present facts showing that his appellate counsel's representation was deficient and that the deficient performance caused him prejudice. That is, petitioner must show that but for appellate counsel's deficient performance, the outcome of the appeal would have been different. *See Strickland*, 466 U.S. at 687-88, 692; *Jones v. Jones*, 163 F.3d 285, 300 (5th Cir. 1998). Effective assistance of appellate counsel does not mean that counsel will raise every available nonfrivolous ground for appeal. *Evitts*, 469 U.S. at 394; *West*, 92 F.3d at 1396. Nor will counsel be deficient for failing to press a frivolous point. Rather, it means, as it does at trial, that counsel performs in a reasonably effective manner. *Evitts*, 469 U.S. at 394. A reasonable attorney has an obligation to research

relevant facts and law and make informed decisions as to whether avenues will, or will not, prove fruitful. *Strickland*, 466 U.S. at 690-91.

Petitioner argues that appellate counsel should have raised on appeal the issue of ineffective assistance of trial counsel. It is usually inappropriate to raise on direct appeal a claim for ineffective assistance of trial counsel, as opposed to raising the issue on collateral review, because the appellate record generally is insufficient to support the claim. *United States v. Higdon*, 832 F.2d 312, 314 (5th Cir. 1987) (noting that defendants should not bring ineffective assistance claims on direct appeal because the record is almost never sufficient to reveal ineffectiveness). Petitioner in the instant case fails to show that the state court record on appeal provided sufficient evidence to support a claim of ineffective assistance of trial counsel.

Petitioner was not precluded from presenting this claim on collateral review. To the contrary, the issue was presented to and rejected by the state courts on collateral review. Regardless, this Court determined in an independent review of the record that petitioner's claims of ineffective assistance of trial counsel are groundless. Appellate counsel is not ineffective in failing to raise groundless arguments on appeal. *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).

The state habeas courts found that petitioner "fail[ed] to show that the representation of his trial and appellate counsel fell below the minimum standard of competence," and denied relief on this issue. *Ex parte Bass*, p. 85. The Texas Court of Criminal Appeals

relied on this finding in denying habeas relief.   Petitioner establishes neither deficient performance nor prejudice, and habeas relief under *Strickland* is unwarranted.   Respondent is entitled to summary judgment on the issue of ineffective assistance of appellate counsel.

## VIII.   Conclusion

Respondent's motion for summary judgment (Docket Entry No. 13) is **GRANTED**. The petition for a writ of habeas corpus is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  A certificate of appealability is **DENIED**.  Any and all pending motions are **DENIED AS MOOT**.

The Clerk will provide a copy of this order to the parties.

Signed at Houston, Texas, on this the ___ day of July, 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE